## Tibbits & Son v. Rock Island & Peoria Ry. Co.

1. *Bills of Lading—Use of, to Obtain Advances on Shipments.*—Bills of lading are constantly used by shippers to obtain advances upon their shipments. It is to be expected by the carrier that such use will be made of them; that advances will be made upon the faith that the property described in them is in the possession of the carrier, and will be delivered to the holder of the bills of lading. Persons trusting in them and relying upon their truth do only what the carrier has every reason to expect will be done. Such use is a material aid to traffic and business, and is to be recognized as an important and useful factor in the business of the country.

2. *Bills of Lading—"Contents and Value Unknown."*—Where a bill of lading of a carload of corn, made by filling up a general blank form for shipping all sorts of freight, contained in a parenthesis the words "contents and value unknown" evidently intended to apply to packages therein mentioned, the contents of which are concealed from view, *it was held* that such a condition in a bill of lading does not apply to corn in bulk loaded into a car from an elevator.

3. *Bill of Lading—Carrier Bound by its Statements, etc.*—Where a person advances money on the faith of a bill of lading as between him and the carrier issuing it, the carrier is bound by the terms of the bill and he can not be permitted to escape his liability by showing that the statements contained in it are false.

4. *Bill of Lading—Weight Stated Subject to Correction.*—A bill of lading contained a statement that the weight, referring to the articles

shipped, was subject to correction. *It was held* that, so far as the statement was concerned, a reasonable construction must be given to it, such as the parties would naturally give when the shipment was made. Errors and mistakes are liable to occur in weighing merchandise, and the right reserved in the bill to correct such errors applied to such ordinary errors and differences in weighing as might be reasonably expected to occur and not to such errors as would be apparent to the sight.

5. *Common Carriers—Bound by Statement of Quantity in Bills of Lading.*—T. H. & Co., of Peoria, delivered to the R. I. & P. Ry. Co. a quantity of corn for shipment. It was loaded into a car from an elevator; weighed by the weighmaster of the Board of Trade; properly sealed and shipped to its destination. T. H. & Co. procured from the railroad company a blank bill of lading which they filled up by inserting the weight as given by the weighmaster, and the company's agent signed it. They then forwarded the bill of lading to T. & S. at the point of destination and drew upon them for the price of the corn, according to the weight as stated. The car arrived at its destination in good order, none of the corn having been lost on the way. T. & S. paid the draft and the freight according to the weight stated, but upon opening the car a shortage of 14,336 pounds was found in the corn and for this they brought suit against the railroad company. The bill of lading contained a column at the top of which was the word "Weight," under which were the words "subject to correction." In this column the weight of the corn was set down. The bill also contained the words "contents and value unknown;" under these conditions the company sought to defeat the suit but it was held that the plaintiff had a right to recover.

**Memorandum.**—Assumpsit. Appeal from the Circuit Court of Peoria County; the Hon. NICHOLAS E. WORTHINGTON, Judge, presiding. Heard in this court at the May term, 1893. Opinion filed December 12, 1893.

The statement of facts is contained in the opinion of the court.

APPELLANTS' BRIEF, RICE & GRAYBILL, ATTORNEYS.

A bill of lading becomes conclusive on the carrier where the consignee or other parties act upon the faith of representations and make advances or give credit, relying upon its truth. Redfield on Carriers, Sec. 247.

The carrier should be careful not to sign a bill of lading until the goods are actually delivered to him. By so doing he may become responsible for them. Abbot on Shipping, 323.

According to the course of trade and business, it is necessarily the fact that the carrier alone knows and ought to know the contents of the car, especially when it is sealed. If "contents and value unknown" apply to anybody in such a case, it would mean that the shipper and the consignee, but especially the consignee, knew nothing of the contents of the car, and they do not know and they have no means of knowing it except as represented to them by the carrier. For this representation the carrier is responsible. Dickerson v. Seelye, 12 Barb. (N. Y.) 99; Armour et al. v. M. C. R. R. Co., 65 N. Y. 111; St. L. & I. Mt. v. Larned, 103 Ill. 295; M. C. R. R. v. Phillips, 60 Ill. 198; 2 Redfield on Railways, 143; Portland Bank v. Stubbs, 6 Mass. 422; Abbott on Shipping, 324; Howard et al. v. Tucker et al., 1 B. & Ad. 712.

It is reasonable to suppose that the words "weight subject to correction" printed in the blank bill of lading, like the other printed words, "contents and value unknown," were not intended to apply at all to shipments where the freight was grain in bulk. But if they have rightfully any force in this case it would only be to enable the carrier to deliver a somewhat less or greater amount of corn than 38,600 pounds in fulfilment of the contract of shipment, and this variation must be within reasonable bounds. 15 Am. and Eng. Ency. of Law, 722; Tilden v. Rosenthal, 41 Ill. 385; 89 Am. Dec. 388; Cabot v. Windsor, 1 Allen (Mass.) 546; Rantor v. Sala, 35 Eng. Rep. (Moak) 518; Rhodes v. Newhall, 126 N. Y. 574; Shichle et al. v. Chouteau, 84 Mo. 161; 10 Mo. App. 241.

### Appellee's Brief, Stevens & Horton, Attorneys.

A bill of lading serves two purposes. It is a contract for transportation and a receipt for goods, and in so far as it operates as a receipt, it is open to explanation and contradiction by parol proof. Hutchinson on Carriers, Sec. 125a; Bissel v. Price, 16 Ill. 412; Great West. R. Co. v. McDonald, 18 Ill. 172; Shepherd v. Naylor, 5 Gray 591; Ellis v. Willard, 9 N. Y. 529; O'Brien v. Gilchrist, 34 Me. 554; Sears v. Wingate, 3 Allen 103; Wallace & Kingman v. Long, 8 Brad. 504.

OPINION OF THE COURT, CARTWRIGHT, J.

Tyng, Hall & Co., of Peoria, Illinois, delivered to appellee at that place a quantity of corn for shipment to Custer City, Pa., and received from appellee a bill of lading for the same. The grain was shipped to the order of Tyng, Hall & Co. at Custer City, with directions to notify appellants. The bill of lading contained a column for the weight of the corn, at the top of which was the word "weight" and under that were the words "subject to corrections." In this column the weight of the corn was set down at 38,600 pounds. The grain was loaded into a car from the Central City Elevator at Peoria, and the weight was furnished by the weighmaster of the Board of Trade, whose weights were universally accepted by parties dealing in grain and by the railroad company. Tyng, Hall & Co. filled up a blank form of a bill of lading furnished them by appellee, inserting the weight so given, and the agent of appellee signed it. The car was sealed and forwarded to Custer City. Tyng, Hall & Co. drew a draft on appellants in favor of Peoria National Bank against the shipment, for $246.18, which appellants paid and received the bill of lading. The car was received at Custer City in good order, with the seals unbroken, showing that no grain had been lost in transit. Appellants paid the freight on the amount of corn stated in the bill of lading, but the corn in the car when opened only weighed 24,264 pounds, a shortage of 14,336 pounds. Appellants brought this suit before a justice of the peace to recover for such shortage, and obtained judgment. On appeal to the Circuit Court, the case was tried by the court without a jury. The foregoing facts appeared and there was a finding and judgment for appellee.

The court held, in propositions of law submitted for the purpose, that as to the quantity of any article of shipment received, a bill of lading issued by a carrier is to be treated as a receipt, and subject to explanation in that respect; that the carrier may make such explanation against an assignee for value whenever the bill of lading, taken as a whole, shows that the carrier does not vouch for the correctness of the

written statement of the quantity received, and, that in view of the language used in the printed portion of the bill of lading in question, which stated that the weight was subject to correction, and that the contents were unknown, it was competent for the defendant to show the quantity of corn received for shipment, and it was not liable for more than was actually received.

Bills of lading are constantly used by shippers to obtain advances upon their shipments, and it is to be expected by the carrier that such use will be made of them, and that advances will be made upon the faith that the property described in them is in the possession of the carrier, and will be delivered to the holder of the bills of lading. Those trusting in them and relying upon their truth, do only what the carrier has every reason to expect will be done. Such use is a material aid to traffic and business, and is to be recognized as an important and useful factor in the stock and grain business of the country. Appellants paid the draft in this instance, relying upon the representations of appellee made in the bill of lading, and they paid the freight charges exacted from them on the 38,600 pounds named in the bill, before they had any means of knowing that less than two-thirds of that amount was in the car. Appellants having advanced money on the faith of the bill of lading, it would be a fraud upon them to permit appellee to escape liability by showing that its statements therein contained were false. St. L. & I. M. R. R. Co. v. Larned, 103 Ill. 293. So far as appellants are concerned, appellee must be bound by the terms of its contract.

The bill of lading used was a general blank form for shipping all sorts of freight, and contained in parenthesis the words " Contents and value unknown," evidently intended to apply to packages therein mentioned, the contents of which were concealed from view. It could not apply to corn in bulk loaded into a car from an elevator. Appellee did not intend to say by its bill of lading, that it had received 38,600 pounds of corn, the contents of which were unknown, and it would not be so understood.

So far as the provision, that weight was subject to correction is concerned, a reasonable interpretation must be given to it, such as both parties would naturally give when the shipment was made. Errors and mistakes are liable to occur in weighing grain, as in other things, and the right to correct such errors was reserved in the contract. Appellants had notice of that provision, and anything attributable to such ordinary errors and differences in weighing as might be reasonably expected to occur, might be corrected, but the right must be kept within the reasonable limits of such errors. Appellants, when advancing money on appellee's statement that it had 38,600 pounds of corn, to which they would get title by acquiring the bill of lading, would certainly not anticipate, under the provision for correcting errors in weighing, such an unreasonable difference· in weight, not attributable to ordinary errors of that sort, as would amount to 256 bushels in a car load of corn. Such a difference would be apparent to sight, and it would require no test of weighing to show that it existed. Appellee would have no right, under cover of correction of errors in weighing, to account for such a difference as could arise only from gross negligence of its agent. Such obvious difference could not be charged to errors not plainly apparent, and merely due to mistakes in weighing, which would be discovered on again weighing the corn. If appellee could reduce the amount of corn more than one-third, there would be no limit to the correcting that might be done. In our opinion, the holding of the court that appellee could not be made liable for more than the amount of corn delivered, was erroneous.

It was provided in the bill of lading that in the event of the loss of any property for which the carrier might be responsible, the value and cost of the same at the point and time of shipment should govern in the settlement for the same, and it is argued that the judgment should not be reversed, because the evidence for appellants related to the value of corn at Custer City, and no evidence was offered of value at Peoria. On the other hand it is claimed that this clause was inoperative as an attempt to limit a common law

liability. We do not regard the provision as a limitation of liability as a carrier, and see no reason why it should not be binding on a shipper, if understood and assented to by him. Whether he does so understand and assent is a matter of evidence and a question of fact. Boscowitz v. Adams Express Co., 93 Ill. 523; Field v. C. & R. I. R. R. Co., 71 Ill. 458.

But this provision was apparently intended to apply to a loss of goods in transit, and we do not regard it as applicable to a case where, as in this instance, the carrier takes and keeps the freight charges for carrying corn a long distance to its destination.

Appellants paid twenty-nine cents per hundred pounds for carrying this amount of 14,336 pounds of corn to Custer City, which was required before the car could be opened, and appellee then assumed to deliver the corn there. This represented a large difference in value between the two places, and it would not be just that appellee should retain that difference and insist upon the clause in the bill of lading.

That would make the provision an agreement that appellants should only be compensated for a part of the damages.

The judgment will be reversed and the cause remanded.