GEORGE T. BROWN, *Appellee,* v. THE MISSOURI, KANSAS & TEXAS RAILWAY COMPANY, *Appellant.*

No. 16,748.

### SYLLABUS BY THE COURT.

1. FINDINGS OF FACT—*Referee—Amendment by the Court.* Findings of fact returned by a referee may be amended by the court, at least in any case where the changes merely reflect the different view of the court as to the effect of testimony accepted by the referee as truthful.

2. RAILROADS—*Weight of Shipment in Bulk—Bill of Lading Prima Facie Evidence—Connecting Carriers.* Where coal is shipped by rail in bulk the weights stated in the bill of lading are *prima facie* evidence of the amount received, in favor of the consignee, against the initial carrier or a connecting carrier that collects charges upon the basis of such statement, notwithstanding such weights were reported by the consignor to the carrier and adopted by it without verification, and notwithstanding the bill of lading contains the words "weights subject to correction."

3. ———— *Coal Lost in Transit—Evidence.* In an action by a consignee to recover for coal lost in transit the plaintiff's evidence held insufficient to show that such losses occurred before delivery to him.

Appeal from Geary district court. Opinion filed December 10, 1910. Reversed. ·

*John Madden,* and *W. W. Brown,* for the appellant.
*William W. Pease,* and *John F. Brown,* for the appellee.

The opinion of the court was delivered by

MASON, J.: George T. Brown sued the Missouri, Kansas & Texas Railway Company on account of coal alleged to have been lost by it in the course of shipments made to him over its line. The court appointed a referee to report on the facts. The referee, among other findings, reported that no competent evidence had been introduced to show either the quantity of coal shipped to the plaintiff or the quantity actually received by him. The court, being of the opinion that there was competent evidence on both points, modified these findings accordingly, found the amount of shortage shown, and gave judgment for the plaintiff. The defendant appeals and urges two grounds of error: First, that the court had no authority to change the referee's findings of fact, and, second, that the evidence did not support the judgment.

In volume 34 of the Cyclopedia of Law and Procedure it is said:

"While in some jurisdictions the court may disregard the findings of fact of the referee and make new findings on the evidence reported, or modify or change the facts as found, the general rule is that the court has no such power." (p. 885.)

This difference in practice exists, but the preponderance of authority in favor of what is stated as the general rule is not so great as might seem from the number of cases cited. Some of them involve a different phase of the subject, some are affected by statute, and one turns upon the fact that the reference was authorized only by the agreement of the parties. In Missouri, as shown by the note to the text quoted, the court may modify the referee's findings of facts where the reference is or might be compulsory, but not where no referee could have been appointed except by consent. The case of *Boatmen's Bank v. Trower Bros. Co.*, 181 Fed. 804, is based upon that distinction. (See, also, 17 Dec.

Dig., p. 1218, tit. "Reference," § 106.)   Here the refer-
ence was by order of the court, and not by consent of
the parties.   In this state the tendency is to a liberal
view of the control of the trial court over the referee's
findings.   (*Kelley v. Schreiber,* 82 Kan. 403, and cases
there cited; *Bethell v. Lumber Co.,* 39 Kan. 230, 236.)
In the present case the findings of the referee which the
court changed were not based upon conflicting oral evi-
dence.   There was nothing in the report of the referee
to suggest a doubt of the truthfulness of any witness.
On the contrary, it fairly appeared that the testimony
given was accepted as true.   The referee found that the
evidence had no tendency to prove certain facts; the
court thought it sufficient to establish them.   The differ-
ence of opinion was not whether the statements in evi-
dence were to be believed, but what inferences were to
be drawn from them—a question of fact which the court
had as fair an opportunity to decide as the referee; and
what they tended to prove—a question of law.   In this
situation there was no occasion for a new trial.   The
evidence was before the court, not only without con-
flict of testimony, but practically with a finding that it
was all true.   It remained only for the court to make
the inferences of fact and conclusions of law and render
judgment.

Some of the coal shipments originated on the de-
fendant's line and some on that of another company.
The referee found that there was no evidence as to the
weight of any shipment.   The court changed this find-
ing so that it read in effect that there was no evidence
on this point except the weights given by the consignor
to the carrier, which were adopted as a basis for freight
charges and inserted in the bills of lading.   Ordinarily
bills of lading are *prima facie* evidence against the car-
rier issuing them of the amount of goods received.
(4 A. & E. Encycl. of L. 522; 1 Hutch. Car., 3d ed.,
§ 158.)   The defendant maintains that here they have
not that effect, because of the insertion of the qualify-

ing words "in apparent good order" and "weights subject to correction." It is doubtful whether the first phrase can. apply to material shipped in bulk (6 Cyc. 418, 419), but in any event it does not change the effect of the instrument as *prima facie* evidence. (4 A. & E. Encycl. of L. 522, 523, note 7; 6 Cyc. 422.) The expression "weights subject to correction" has an important function. It avoids the estoppel which would otherwise under some circumstances preclude the carrier from disputing the weight. (6 Cyc. 418.) It does not destroy the *prima facie* effect of the recital as to quantity; it merely leaves the matter open to further inquiry, instead of being absolutely concluded. Its insertion in a bill of lading has been held, where other rights have intervened, not even to prevent the statement of weight from being conclusive, except as to minor errors. (*Tibbits v. R. I. & P. Ry. Co.*, 49 Ill. App. 567, 572.)

The question whether the recital of a bill of lading as to quantity is competent evidence against a connecting carrier is more difficult. In section 1348 of volume 3 of the third edition of Hutchinson on Carriers it is said:

"The receiving carrier will be regarded as the agent of the succeeding connecting carriers for the purpose of accepting the goods for transportation over the connecting lines, and the receipt or bill of lading given by such receiving carrier will be competent evidence, in an action against any of the succeeding carriers into whose possession the goods may have come, to show the delivery for transportation, the condition of the goods at the time of such delivery, and the terms of the shipment."

The only case cited in support of this text is *Southern Express Co. v. Hess*, 53 Ala. 19, where exceptional circumstances were relied upon as making the company receiving the goods the agent of the connecting carrier. In the present case we think that the act of the defendant in collecting freight charges upon the basis of the weights stated in the bills of lading was an adoption by

it of such weights, which thereby became *prima facie* evidence against it of the amount of coal shipped.

The connecting carrier is presumed to have received the quantity of goods shown to have been delivered to the initial carrier. (3 Hutch. Car., 3d ed., § 1348, second paragraph of note 6; *Cooper & Co. v. Geo. Pacific Railway Co.*, 92 Ala. 329; *S., F. & W. R'y Co. v. George L. Harris*, 26 Fla. 148.) The remaining question, therefore, is whether the plaintiff showed that he received a less quantity of coal than the bills of lading described.

The plaintiff testified that the custom was for the railroad company to place a car of coal on the sidetrack and notify him; that he would then notify his teamsters and have them unload it, hauling the coal to his scales, where it was weighed. The company's liability as a carrier therefore ceased upon his assuming control. (6 Cyc. 457.) The referee found that the plaintiff correctly weighed the coal that was transferred from the cars to his scales, but that there was no competent evidence that all the coal in any car was so transferred. The court changed this finding concerning the lack of evidence, and held that as the plaintiff had shown due care in the handling of the coal there was no presumption of any loss after he took charge. The plaintiff further testified in general terms that he always exercised supervision over the drivers; that he was careful to see that they unloaded the coal as he ordered it; that he oversaw them in the performance of their duties; that he had a general supervision of everything that went on, and a knowledge of the shortage of every car. But upon being asked how he knew that the teamsters brought all of the coal from the cars to the scales he answered: "There is a railroad law that requires us to do certain things, and when they were not done we find it out instantly." No explanation was given as to what he meant by this. He also said in answer to the same question that the teamsters were paid by the ton for hauling, and would not be apt to throw any of it away. At another time he said he was testifying on the

record of the system he used, and that that was the knowledge he had of the transaction. It seems clear, therefore, that he did not profess to be speaking from personal knowledge. Again, he testified that there was some little stealing of coal during the unloading at the yards; that most of the coal cars were covered and were sealed on their arrival; that his effort was to unload the cars so far as practicable on the day they were delivered, so as to lessen his loss; that sometimes when a night intervened before a car was emptied he had sealed it, but not always. None of the teamsters was produced, nor was any witness who had inspected this part of their work or who knew that all of the coal or substantially all of it was transferred from the cars to the plaintiff's scales. Of course it was not necessary to have produced witnesses who had watched the operation of unloading throughout, but no one who testified in behalf of the plaintiff seemed to have known anything personally about the coal until it reached his scales. The loss for which recovery was had was distributed among thirty-six cars, and averaged about one ton to a car. On one car it was over five tons, but with this exception it ran approximately half a ton to two tons and a half. It seems unlikely that the loss could have occurred wholly after the arrival of the cars, but some considerable portion of it may. The plaintiff has the burden of showing how much of it had taken place before delivery to him, and, having failed to produce any evidence from which that can be ascertained, must be held to have failed in his proof.

The judgment is reversed and the cause remanded, with directions to enter judgment for the defendant.