No. 21,268.

THE SEVERY STATE BANK, *Appellant*, v. THE PEOPLES STATE BANK OF CHERRYVALE, *Appellee.*

#### SYLABUS BY THE COURT.

REFERENCE—*Findings of Referee—Tardy Motion for New Trial Denied—No Appeal Therefrom—Judgment.* The judgment responds to findings of fact and conclusions of law stated by a referee. The findings of fact respond to the issues made by the pleadings, and the conclusions of law merely state the legal liability arising on the findings of fact. Grounds for a new trial were not presented to the district court in time, and no appeal was taken from the order overruling the motion for a new trial which was filed. *Held,* the judgment must be affirmed.

Appeal from Montgomery district court; THOMAS J. FLANNELLY, judge. Opinion filed February 9, 1918. Affirmed.

*A. F. Sims,* of Howard, and *F. S. Jackson,* of Topeka, for the appellant.

*Chester Stevens,* of Independence, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one to recover a sum of money standing to the credit of the plaintiff on the books of the defendant. The defendant counterclaimed, and was awarded judgment. The plaintiff appeals.

The case was referred to a referee, who returned findings of fact and conclusions of law which disclose the nature of the controversy, and which follow:

"1. That the plaintiff, the Severy State Bank, is, and was, at all of the times mentioned in the pleadings and in the evidence, a banking corporation, organized and existing under and by virtue of the laws of the state of Kansas, with its bank at Severy, Greenwood county, Kansas.

"2. That the defendant, the Peoples State Bank, is, and was, during all of the times mentioned in the pleadings and in the evidence, a banking corporation, organized, existing and doing business under and by virtue of the laws of the state of Kansas, with its bank at Cherryvale, Kansas.

"3. That M. J. Bidwell was, during all of the times in which the transactions involved in this action arose, that is, from and prior to the beginning of the year 1913 to and including a part of December, 1913,

the president and general manager of the Severy State Bank, plaintiff in this action, and during all of said time was in the active control, management and conduct of all of its business and affairs, and duly authorized by said bank to so manage, control and conduct its affairs.

"4. That during the same time, and ever since, D. W. McKinley was, has been, and now is the president of the defendant bank, and in the active control, management and conduct of its business.

"5. The defendant bank admits that it is indebted to the plaintiff bank in the sum of $2,435.83.

"6. That in the early part of 1913 M. J. Bidwell wrote a letter to the defendant stating that the plaintiff bank was about to take some good prime cattle loans, which it would like to dispose of to the defendant bank; and that the defendant bank advised plaintiff that it would handle some of the loans, and that thereafter said defendant bank handled several loans; that from the correspondence it was justified in assuming that they were dealing with the Severy State Bank, and not with M. J. Bidwell, personally. As a matter of fact, some of the loans handled by the defendant bank at the time they were purchased by the said defendant bank, belonged to M. J. Bidwell, personally, and some belonged to the Severy State Bank.

"7. That all of these loans that were purchased by said defendant bank, either from M. J. Bidwell or the plaintiff bank, were settled, excepting two notes which are in controversy in this action. One of these notes is known as the Flaiz note; the other is known as the Edwards note.

"8. That the Flaiz note at the time it was sent to the defendant bank was the property of the plaintiff bank, and that on or about September 19, 1913, A. Flaiz, the maker of said note, delivered to said plaintiff bank two checks aggregating $590.38, with instructions to apply them on his note; that said checks were duly cashed, but the proceeds thereof, instead of being indorsed on note as directed, were turned over to M. J. Bidwell, who appropriated it for his personal use, and that, therefore, the plaintiff is indebted to said defendant for the sum of $590.38 with interest thereon at the rate of six per cent per annum from the 19th day of September, 1913.

"9. That the other note in controversy in this action is known as the Edwards note, and is a note dated November 1, 1913, for the sum of $2,108.44 and signed by John Edwards; that on November 1, 1913, the said plaintiff bank accepted this note and carried it as cash item in substitution for some checks which it had been carrying as cash items for some days previous to November 1; that after carrying this note as a cash item for a day or so, it was charged to the account of the Peoples State Bank, together with a letter which stated that this was a dandy, good cattle loan and was secured by a mortgage which had been recorded. As a matter of fact, there were prior mortgages on all of the cattle reported to be covered by said mortgage, and said mortgage was never recorded, and all of the property covered by said mortgage was taken possession of by the owners of the prior mortgages; that John Edwards has no other property with which to pay this note, and that because said loan was purchased

by the defendant bank from plaintiff bank on the assurance that it was a dandy, good cattle loan, secured by recorded mortgage, and because these representations were false, I find that the plaintiff is indebted to the defendant bank in the sum of $2,108.44, with interest from November 11, 1913, at six per cent.

"I find as conclusions of law:

"1. That the defendant is entitled to a judgment against the plaintiff for the sum of $598.30, the amount received by plaintiff from A. Flaiz, with interest thereon at the rate of six per cent per annum from the 19th day of September, 1913, to March 27, 1916, in the sum of $90.53, or in sum, as principal and interest, $688.83.

"2. That the defendant is entitled to a judgment against the plaintiff for the sum of $2,108.44, with interest at the rate of six per cent per annum from the 11th day of November, 1913, to March 27, 1916, in the sum of $300.99, or in the sum of principal and interest of $2,409.43.

3. "That the aggregate judgment defendant is entitled as against the plaintiff is $3,098.26.

"4. That the plaintiff is entitled to a credit on the judgment in favor of defendant in the sum of $2,435.83, with interest thereon at the rate of six per cent per annum from the 19th day of February, 1914, to March 27, 1916, in the sum of $307.71, or in the sum of principal and interest of $2,743.54.

"5. That the final judgment should be rendered in favor of the defendant and against the plaintiff, after allowing the above credit, of $354.72."

The plaintiff opens its argument with the following statement: "At the outset of the case it is well to consider, under the procedure taken, what is before this court for review." Consideration of the procedure taken compels the conclusion there is substantially nothing before the court for review.

The report of the referee was filed on March 27, 1916. Subsequently some errors in computation were corrected on application of the referee, which did not affect the determination of the contested issues, and which are not now material. On April 4, 1916, the plaintiff filed a motion to set aside the 6th, 8th, and 9th findings of fact and the conclusions of law. The motion is not abstracted. The defendant filed a motion for judgment pursuant to the referee's report. On November 8, 1916, the court denied the plaintiff's motion, granted the defendant's motion, and rendered judgment for the defendant. Within three days following rendition of judgment the plaintiff filed a motion for a new trial, which was overruled on December 6, 1916. The appeal was taken on January 11, 1917. The notice of appeal limited the appeal to the proceedings of November 8,

1916.  No appeal was taken from the order overruling the motion for a new trial.

In the brief the claim is made that judgment should have been rendered for the plaintiff on the pleadings.  No motion was made in the district court for judgment on the pleadings, and no error requiring correction by reversal of the judgment has been committed with respect to rendering judgment on the pleadings.

The motion for a new trial was not filed in time.  (*Milling Co. v. Schreiber,* 102 Kan. 172, 169 Pac. 222.)  No excuse for delay in filing the motion appears, and if it were necessary the presumption would be the court overruled the motion because it was not filed in time.  If the motion had been granted the presumption would be the delay was excused, presumptions being indulged to uphold but not to defeat judgments.  However, no appeal was taken from the order denying a new trial.

The motion to set aside findings of fact not being abstracted, the court is left in ignorance of what it contained.  Assuming it contained matter similar to that embodied in one of the assignments of error, the motion was *pro tanto* a motion for a new trial, and was not filed in time.  Every attack made on the findings of fact ought to have been made, and was in fact made, by motion for a new trial, the benefit of which has been waived.

The conclusions of law stated by the referee followed inevitably from the findings of fact.  Additional or different conclusions of law do not appear to have been requested.  So long as the findings of fact stand, the conclusions of law must stand.

Every other assignment of error raises questions which could properly be presented to the trial court only through the instrumentality of a motion for a new trial.

The plaintiff invokes the case of *Brown v. Railway Co.,* 83 Kan. 574, 112 Pac. 147.  In that case all the testimony was before the court without conflict, and practically with a finding that it was all true.  The referee held the testimony had no tendency to prove certain facts.  The situation was the same as if the probative facts were agreed to and the only question was what ultimate inference was warranted.  It was held the court could draw the inference, and there was no occasion for

a new trial. No such situation is presented here. In this instance it was necessary for the referee to choose between the testimony of different witnesses relating to material matters respecting both notes. The credibility of witnesses was involved, and probative facts tending to establish the plaintiff's theory had to be weighed against probative facts tending to establish the defendant's theory.

This opinion might well close here, but because the defendant has frankly met the plaintiff's contentions on the merits, the court has examined the merits of the controversy far enough to be satisfied the conclusions of the referee and of the district court were correct.

The major premise of the plaintiff's case is that Bidwell owned both notes when they were sent to the defendant. The plaintiff received credit for both notes. The action is brought to recover the credit, but it is claimed the transactions by which the plaintiff received the credit were personal transactions of Bidwell with the defendant, and not transactions between bank and bank. From this premise inferences of fact and conclusions of law are derived. There was convincing evidence that both notes were the property of the plaintiff when they were purchased by the defendant.

The plaintiff says that ownership of the notes was not an issue made by the pleadings, and that evidence of ownership by the bank was improperly admitted. The importance of the fact of ownership is indicated by the space in the plaintiff's briefs devoted to argument based on the contention Bidwell owned the notes. How it came into the case, whether directly or collaterally, is not very material. But the plaintiff tendered the issue in the petition. Issue was joined by the general denial of the answer, and the plaintiff itself supplied reliable evidence that it owned the notes. Ownership of the notes was a question of fact, and the plaintiff recognizes the nature of the question when it marshals evidence indicating the notes were Bidwell's notes—the fact that the notes were payable to Bidwell, conduct with respect to other notes, the rule of the banking department, the reconcilement sheet, and other evidence. The court does not propose to debate the evidence, but it may be observed the reconcilement sheet stated the truth, and did not indicate that the defendant took the

notes as Bidwell paper instead of bank paper. The notes were made payable to bearer by Bidwell's indorsement, and came to the defendant in that form. The plaintiff was not liable as guarantor or indorser, or otherwise, on the Flaiz note, and was not liable for false representations respecting that note. The Edwards note was not in existence when the reconcilement sheet was sent in.

Bidwell was the discount committee of the plaintiff, so far as it had one, and was the Severy State Bank, so far as management and control of its business were concerned. The law did not prohibit the plaintiff from acquiring title to notes which Bidwell had previously taken to himself in his private business. The regularity or irregularity of his dealings between himself as an individual and himself as the bank are not material, unless the defendant dealt with him as an individual, or had reason to believe he was using his bank for personal ends in the particular transactions involved. The evidence is quite conclusive that the defendant dealt with the plaintiff as a bank, through its president, Bidwell, and had no more knowledge or notice of his crookedness than the plaintiff's quiescent board of directors, who trusted him implicitly.

Flaiz, and the cashier of the plaintiff with whom Flaiz left checks to pay his note, gave different accounts of what took place on that occasion. Accorded a liberal interpretation, and considered in connection with other evidence, the testimony of Flaiz supports the findings of the referee. There is no doubt about the terms under which the defendant bought cattle paper of the plaintiff, including the Edwards note, and if the plaintiff, by its president, could sell the paper at all, it could bind itself, by its president, by representations respecting the character of the paper, which induced the defendant to buy.

In the motion to set aside findings, the motion for a new trial, and the assignments of error, it is charged that the findings of fact were induced by erroneous views of the law, and were contrary to law. The law contemplated is that discussed in the case of *Hier v. Miller*, 68 Kan. 258, 75 Pac. 77, and kindred cases. The charge is not supported by anything disclosed by the record. If the facts had been found as the plaintiff desired, the law referred to would have applied. The facts

having been found otherwise, the law which the plaintiff invokes has no application.

It is not necessary to extend this *obiter* discussion of the merits further. The only proper remedy for the distress occasioned by the referee's work was by timely motion for a new trial, and appeal from the order denying a new trial.

The judgment of the district court is affirmed.