DETERMINED IN THE

## FIRST DISTRICT

OF THE

# APPELLATE COURTS OF ILLINOIS

## DURING THE YEAR 1924.

---

## Alton Iron & Metal Company, Appellee, v. Wabash Railway Company, Appellant.

### Gen. No. 29,226.

1. COURTS—*federal authorities controlling on interstate commerce question.* Where a shipment of freight was interstate and the bills of lading were issued pursuant to federal statute the rights and liabilities of the parties must be determined by reference to federal statutes and the decisions of federal courts.

2. CARRIERS—*liability of terminal carrier for nonreceipt of freight from initial carrier.* The Carmack Amendment to section 20 of the Interstate Commerce Act requiring the first or receiving carrier of an interstate shipment of goods to issue a receipt or bill of lading therefor and making it liable to the lawful holder thereof for any loss or damage to the goods by it or any connecting carrier makes the connecting carrier liable under such bill of lading for damages caused by the non-receipt by such carrier of all or part of the goods, or their failure to correspond with the description thereof in the bill of lading; and where plaintiff purchased a shipment of scrap iron in good faith, relying on the description and weights stated in the bills of lading, the terminal carrier is liable to plaintiff for any part of the shipment not delivered and evidence tending to show the loss to have occurred on a prior line presents no defense to an action for its value.

(151)

3. CARRIERS—*provision of bill of lading as to unknown contents inapplicable to shipment in open car.* A statement contained in a bill of lading that "the contents and condition of contents of packages are unknown" following the language of section 21 of the federal Bills of Lading Act was not intended to apply to a shipment of scrap iron in open cars.

4. CARRIERS—*when weight of shipment stated in bill of lading not binding on shipper.* Where, in a bill of lading for a shipment of scrap iron, under a printed heading is written in pencil the figures indicating the weight and beneath is a computation of the gross weight, tare and net weight and there is nothing in the bill to indicate that such words and figures were the shipper's weight but the figures seem to show that they were made by the carrier's agent when the loaded cars were weighed, the words "subject to correction" were evidently intended to refer only to such minor differences in weight as might be accounted for by a difference in scales or slight errors in weighing and would not relieve the carrier from liability for a large discrepancy between the quantity of iron as shown by such bill of lading and that actually delivered.

5. CARRIERS—*delay of consignee in removing freight no defense to loss of shipment en route.* In an action by a bona fide purchaser of a shipment of scrap iron for failure of the carrier to deliver the quantity of iron shown by the bill of lading, the fact that the iron was not removed within 48 hours did not change the carrier's liability to that of warehouseman only, where there was no evidence that the loss occurred after the expiration of such period but on the contrary defendant's evidence tended to prove that the quantity it delivered was the same it received from a preceding carrier.

6. CARRIERS—*bill of lading as conclusive against carrier under Carmack Amendment.* Under the Carmack Amendment to the Interstate Commerce Act a carrier is not permitted, in an action for loss of part of a shipment, to deny that it received the quantity specified in the bill of lading, as against a bona fide holder of the bill of lading.

7. CARRIERS—*collection of freight by carrier upon stated weights as estoppel to question weight.* A carrier is estopped from asserting that it did not receive the quantity of goods described in the bill of lading by collecting freight charges based upon the weights named in the bill.

Appeal by defendant from the Municipal Court of Chicago; the Hon. GEORGE A. CURRAN, Judge, presiding. Heard in the second division of this court for the first district at the March term, 1924. Affirmed. Opinion filed December 16, 1924. Rehearing denied December 27, 1924.

JOHN GIBSON HALE, for appellant.

MOSES, ROSENTHAL & KENNEDY, for appellee; HERBERT H. KENNEDY, of counsel.

MR. PRESIDING JUSTICE FITCH delivered the opinion of the court.

Plaintiff, as the holder for value of two negotiable bills of lading covering a shipment by rail from Rayville, Louisiana, to Chicago, of approximately 74 tons of scrap iron, recovered a judgment against defendant, the terminal carrier, for $151.53, representing the value of nearly 8 tons of scrap iron which were missing from the shipment when it was delivered to the plaintiff in Chicago. Defendant appeals.

The trial was before the court without a jury. The plaintiff's evidence consisted of the two bills of lading, one for each carload, issued by the receiving carrier in Louisiana, for transportation to the order of the shipper at Chicago, evidence tending to prove that plaintiff purchased the shipment in Chicago upon the basis of the weights stated in the bills of lading and paid to defendant the freight charges over the whole route on the same basis, evidence showing that the quantity of scrap iron in the cars when delivered by defendant to plaintiff weighed about 8 tons less than the quantity specified in the bills of lading, and evidence showing that the value per ton of scrap iron at that time in Chicago was $19. Defendant did not dispute any of this evidence, but introduced evidence on its part tending to prove that it received the two open "gondola" cars containing the shipment of scrap iron from another carrier at East St. Louis and transported the same safely and without loss over its line to Chicago, where it delivered the two cars and their contents to the plaintiff in the same condition as when it received the same from the preceding carrier. The natural inference to be drawn from defendant's evi-

dence—which was undisputed—is that defendant never received the quantity of iron specified in the bills of lading, and that the loss occurred on the line of some preceding carrier.

Upon these facts, it is contended by defendant's counsel that defendant is not liable for the value of the missing quantity of scrap iron because, it is said, the common-law liability of the terminal carrier in an interstate shipment of goods is for its own negligence only, and such liability was not changed or affected by the Carmack Amendment to section 20 of the Interstate Commerce Act, that there is no proof that plaintiff's loss was due to any negligence on defendant's part, but, on the contrary, the proof shows that such loss was not caused by any negligence of defendant. To this contention plaintiff's counsel reply by saying that defendant is an insurer and is estopped from denying that it received the quantity of iron specified in the bills of lading, and therefore is liable for the value of so much of the stipulated quantity of iron as it failed to deliver to the plaintiff who purchased the same in good faith upon the strength of the statements contained in the bills of lading.

As the shipment in question was an interstate shipment and the bills of lading were issued pursuant to the federal statute, the rights and liabilities of the parties must be determined by reference to federal statutes and the decisions of federal courts. (*Adams Exp. Co. v. Croninger,* 226 U. S. 491, 507; *Southern Ry. Co. v. Prescott,* 240 U. S. 632, 636.)

Prior to the enactment of the Carmack Amendment to section 20 of the Interstate Commerce Act, the rule recognized in the federal courts was that each carrier in an interstate shipment of goods, in the absence of a special contract to the contrary, was only bound to safely carry the goods over its own line and safely deliver them to the succeeding carrier. (*Michigan Cent. R. Co. v. Mineral Springs Mfg. Co.,* 16 Wall.

(U. S.) 318; *Myrick v. Michigan Cent. R. Co.,* 107 U. S. 102, 107.) If such carrier was the last or terminal carrier, its duty was to safely carry the goods over its own line and deliver them to the consignee at the agreed destination. (*Southern Ry. Co. v. Prescott, supra.*) By the Carmack Amendment this rule was modified to the extent of requiring the first or receiving carrier in an interstate shipment of goods to issue a receipt or bill of lading therefor and making it "liable to the lawful holder thereof for any loss, damage or injury to such property caused by it or by any common carrier * * * to which such property may be delivered." In *Atlantic Coast Line R. Co. v. Riverside Mills,* 219 U. S. 186, it was held that this amendment imposes upon the first carrier which receives property in one State for transportation to a point in another State "the obligation of through transportation, with carrier liability throughout." In *Georgia, Fl. & Ala. Ry. Co. v. Blish Milling Co.,* 241 U. S. 190, 194, it was further held that: "The connecting carrier is not relieved from liability by the Carmack Amendment but the bill of lading required to be issued by the initial carrier upon an interstate shipment governs the entire transportation and thus fixes the obligations of all participating carriers to the extent that the terms of the bill of lading are applicable and valid," that is, the connecting or terminal carrier "takes the goods under the bill of lading issued by the initial carrier" and the obligations of the connecting and terminal carriers "are measured by the terms" of such bill of lading. (Id., p. 196.) In *Pennington v. Grand Trunk Western R. Co.,* 277 Ill. 39, it was said that the effect of the holding in the *Blish Milling* case, *supra,* is "that if in such a shipment a connecting carrier is sued, the rights and remedy of the shipper are to be determined under the federal laws existing prior to the enactment of the Carmack amendment, but the bill of lading issued

156     APPELLATE COURTS OF ILLINOIS.

Alton Iron & Metal Co. v. Wabash Railway Co., 235 Ill. App. 151.

by the initial carrier is to be considered, under the provisions of the Carmack Amendment, as the bill of lading of the connecting carrier, and therefore binding in all of its provisions that are valid and applicable to that suit." (See also, *Gallagher v. Grand Trunk Western Ry. Co.*, 207 Ill. App. 316.)

Section 22 of the federal Bills of Lading Act (Act of August 29, 1916, 39 Stat. L. 542) provides, in substance, that if a negotiable bill of lading for the interstate transportation of goods has been issued by or on behalf of any carrier, such carrier shall be liable to the holder thereof, "who has given value, in good faith, relying upon the description therein of the goods, for damages *caused by the non-receipt by the carrier of all or part of the goods,* or their failure to correspond with the description thereof in the bill at the time of its issue." Since the bills of lading issued by the initial carrier in this case are to be considered, under the federal decisions cited, as defendant's bills of lading, and since the proof shows that plaintiff, in good faith, relying on the description and weights stated in such bills of lading, purchased and paid value for the property therein described, and thereby became the lawful holder of the bills of lading, it follows, by the express terms of the federal statute, that defendant is liable to plaintiff for damages "caused by the non-receipt" by defendant of all or any part of the scrap iron described in such bills of lading, or the failure of the quantity delivered to correspond with the quantity described therein; and as the evidence offered by defendant tends only to prove that the missing tons of scrap iron were not lost on its line, but were never in fact received by defendant from the preceding carrier, it follows also that such evidence presents no defense to the claim of the plaintiff. In *American Hide & Leather Co. v. Southern R. Co.*, 310 Ill. 524, 530, a similar provision in the Uniform Bills of Lading Act of this State was

held to deprive the carrier of the defense, formerly available, that it never received the goods mentioned in a bill of lading issued by it.

Section 21 of the federal Bills of Lading Act provides that "when package freight or bulk freight is loaded by a shipper and the goods are described in a bill of lading merely by a statement * * * that the contents, or condition of the contents, of packages are unknown, * * * *such statements, if true,* shall not make liable the carrier issuing the bill of lading, although the goods are not of the kind or quantity, or in the condition * * * they were said to be by the consignor." The same section also provides that the carrier may insert in the bill of lading the words, "Shipper's weight, load and count," or words of like import, to "indicate that the goods were loaded by the shipper and the description of them made by him; *and if such statement be true,* the carrier shall not be liable for damages caused by the improper loading or by the non-receipt or the misdescription of the goods described in the bill of lading." Defendant's counsel claims that the words contained in the bills of lading in this case, describing the property as "1 Car Scrap Iron," and giving the weights under a printed heading of "Weight (Subject to correction)," and the printed statement that such property was received from the shipper "in apparent good order, except as noted, contents and condition of contents of packages unknown," indicate that the shipment was "loaded by the shipper and the description of them made by him," and that therefore, under said section 21, the statement of the weights is not binding on defendant. By the terms of that section, the carrier is only relieved from liability caused by the improper loading or the nonreceipt or misdescription of the goods where it is true, in fact, that the goods "were loaded by the shipper and the description of them made by him." If such is not the

158    APPELLATE COURTS OF ILLINOIS.

Alton Iron & Metal Co. v. Wabash Railway Co., 235 Ill. App. 151.

fact the section does not apply. There is no evidence that such was the fact in this case. It is clear that the statement printed in the bills of lading that "the contents and condition of contents of packages is unknown" cannot be true, since this was a shipment of *scrap iron, in open cars.* There were no "packages" in the shipment to which the quoted language could possibly apply, nor were there any concealed "contents" which could possibly be unknown. The printed clause was not intended to apply to such a shipment. (*Tibbits & Son v. Rock Island & P. Ry. Co.,* 49 Ill. App. 567, 574.) Under the printed heading: "Weight (Subject to correction)" is written in pencil the figures indicating such weight, and beneath such figures is a computation in pencil of the "gross" weight, and of the "tare" and of the "net" weight. There is nothing in the bills of lading to indicate that such words and figures were the "shipper's weight and count." On the contrary, they seem to be the words and figures of the receiving carrier's agent, made when the *loaded* cars were weighed. There is no evidence that they were weighed by the shipper. The words, "subject to correction" were evidently intended to refer only to such minor differences in weight as might be accounted for by a difference in scales or such slight errors as might reasonably be expected in weighing the shipment. (*Tibbits & Son v. Rock Island & P. Ry. Co., supra.*)

It is next contended by defendant's counsel that because there is a provision in the bills of lading that property not removed within 48 hours after notice of its arrival has been given "may be kept in car, depot or place of delivery of the carrier, or warehouse, subject to a reasonable charge for storage and to carrier's responsibility as warehouseman only," and because the property in question was not removed within such 48 hours, defendant was only liable, as warehouseman, on affirmative proof of defendant's negli-

gence.   This contention assumes that the loss occurred while the property was in defendant's possession after the expiration of such 48 hours.   There is no evidence that such was the fact.   If it be true, as defendant's evidence tends to prove, that the quantity it delivered to the plaintiff was the same quantity it received from the preceding carrier in East St. Louis, it is obvious that no loss or damage to the property occurred while the defendant was acting as a warehouseman.   Its liability in this action arises out of its proved failure, without legal excuse, to safely carry and deliver at the agreed destination the full quantity of scrap iron described in the bills of lading under which it agreed to so carry and deliver.   Under the federal statutes mentioned, defendant is not permitted to deny that it received the quantity specified in the bills of lading, as against the bona fide holder for value of the same.   It is also estopped from asserting it did not receive such quantities by collecting freight charges based upon the weights named in the bills of lading.   (*Brown v. Missouri, K. & T. R. Co.,* 83 Kan. 574.)

The judgment of the municipal court is affirmed.

*Affirmed.*

BARNES and GRIDLEY, JJ., concur.