FIRST NATIONAL BANK, RESPONDENT, v. MISSOURI PACIFIC RAILWAY CO., APPELLANT.

FIRST NATIONAL BANK, RESPONDENT, v. CHICAGO, ROCK ISLAND & PACIFIC RY. CO., APPELLANT.

Kansas City Court of Appeals.   December 7, 1925.

**1.—Carriers—Demurrer—Evidence Held Sufficient to Make Prima-Facie Case as Against Demurrer.** In suit against carrier by assignee of bill of lading for value of goods, described therein, destroyed by fire, proof of bill

of lading showing receipt of merchandise alleged to have been shipped, non-delivery of goods, the value thereof and that plaintiff was a holder in due course of bill of lading, **held** to make a prima-facie case for plaintiff which could not thereafter be taken from jury.

2.—Same—Same—**Where Plaintiff Made Prima-Facie Case, it Devolved upon Carrier to Overcome Same by Evidence That Goods Were Not Delivered to It.** Where plaintiff made a prima-facie case, it devolved upon carrier to overcome same by substantial evidence to satisfy jury that goods were not delivered.

3.—Same—**Notation on Bill of Lading "Shippers Load and Count" Does Not Have Effect of Overcoming Prima-Facie Case Made by Plaintiff.** Notation on bill of lading "shippers load and count" **held** not to have effect of overcoming prima-facie case made by plaintiff, but indicates that carrier received shipper's load and count and issued bills of lading accordingly.

4.—Same—**Where Evidence is Conflicting as to Delivery of Goods to Carrier, Question is for Jury.** Where plaintiff's testimony, in contradiction to defendant's, showed actual delivery of goods to defendant, court did not err in refusing defendant's demurrer to evidence.

5.—Same—**Instruction That if Negotiable Bills of Lading Were Purchased by Plaintiff in Good Faith and Held by It as Collateral Security, Verdict Should Be for Plaintiff, Held Not Erroneous.** Where evidence showed that negotiable bills of lading were not taken by plaintiff as collateral security for pre-existing debt, an instruction that plaintiff could recover if it purchased bills of lading in good faith in belief that merchandise had been received by carrier and held them as collateral security for payment of unpaid obligation of shipper, **held** not erroneous in view of section 13545, Revised Statutes 1919.

6.—Same—**Contention That Plaintiff Could Not Recover if Bills of Lading Were Held by It as Collateral Security Only Held Without Merit.** Defendant's contention that plaintiff had no right to recover because it held bills of lading as collateral security only, **held** without merit, the issue being controverted was for the jury.

7.—Same—**Where Question as to Delivery of Goods to Carrier Was Controverted, It Was for Jury.** Submission to jury of question whether car was loaded sufficient time prior to fire to have enabled defendant to have moved car, being a material and controverted fact, **held** not error, and a finding for plaintiff thereon was not a violation of section 13459, Revised Statutes 1919, rendering bill of lading void if given before delivery of goods.

8.—Same—**Delivery to Carrier at Customary or Designated Place in Contract Held Sufficient.** Constructive delivery may be made sufficient by special contract, custom or usage, and the placing of goods by shipper in place where they are accustomed to be deposited, or at a place specifically designated by contract, will be sufficient delivery and acceptance to charge carrier as an insurer, although no actual notice is given to carrier or assent shown.

---

*Corpus Juris-Cyc. References: Carriers, 10CJ, p. 223, n. 86; p. 354, n. 48; p. 371, n. 52, 53, 59; p. 389, n. 89; p. 390, n. 20; p. 392, n. 50; p. 393, n. 53. Trial, 38Cyc, p. 1578, n. 37.

Appeal from Circuit Court of Buchanan County.—Hon. L. A. Vories, Judge.

AFFIRMED.

*Ben J. Woodson* and *John E. Dolman* for appellants.

*Culver, Phillip & Voorhees* for respondent.

ARNOLD, J.—These are suits based upon two certain bills of lading held by plaintiff, by assignment, for the value of grain and feed described therein. Said shipments were destroyed by fire on December 27, 1922, at the elevator of the shipper, the Schreiber Flour & Cereal Co., at Kansas City, Mo.

The causes were filed separately in the circuit court of Buchanan county but by agreement were consolidated for the purposes of the trial and tried together. Plaintiff recovered a verdict for $896.53 in case No. 15459 wherein the Missouri Pacific Ry. Co. is defendant, and in case No. 15460 wherein the Chicago, Rock Island & Pacific Ry. Co. is defendant, the verdict for plaintiff was for $708.25.

Motions for new trial and in arrest of judgment were unavailing and both defendants appeal. The facts in each case being the same in all essentials, there is presented a joint abstract of the record and briefs.

The record shows that plaintiff is a National Bank located at St. Joseph, Missouri, and defendants public service corporations engaged in the transportation of merchandise for hire from Kansas City, Mo., to other points in the State of Missouri and elsewhere. On December 26, 1922, the defendant Missouri Pacific Railroad Co. issued its certain bill of lading to the Schreiber Flour & Cereal Co., doing business at Kansas City, for the goods described in said bill of lading. consigned to shipper at Pacific, Mo. On the same day the other defendant, the Rock Island Ry. Co., issued its bill of lading to the Schreiber Flour & Cereal Co. for certain products described therein, and consigned to shipper's order at Eugene, Mo. The goods mentioned in each of these bills of lading consisted of feed and grain in sacks, conditioned upon shipper's load and count. At the time said bills of lading were issued, both cars covered thereby were upon the tracks of the Schreiber Flour & Cereal Company, inside its elevator and mill at Kansas City, Mo.

At about 1:30 to 1:45 P. M. on the 27th day of December, 1922, the said mill and elevator were destroyed by fire and the cars in question with their contents were also destroyed. The bills of lading were issued by defendants at the request of the shipper. The switch order on the Rock Island car (No. 35965 C. & R. I.) was issued by the yard clerk at 10:30 A. M. on December 26, 1922, and the switch order on the Mo. Pac. car (No. 88288 C. & N. W.) was issued by the same yard clerk a 5:15 P. M. on the same date. Up to this point there is no dispute as to the facts.

Defendants insist that at the time the switch orders were issued, the yard clerk was advised by the shipper that the cars had been fully loaded and sealed and were ready to go. It appears that by custom the seals were furnished the shipper by the railroad company and the cars were sealed by the shipper.

It is in evidence that on the morning of December 27th at about eight o'clock, the man who coopered the cars (that is to say, prepared them for shipping purposes by sweeping them out, putting tar paper around the doors and seeing that there were no protruding nails in the floor or sides that would tear the sacks), entered the Mo. Pac. car (C. & N. W. No. 88288) and found it was not loaded at the time the switch order was procured; that during the forenoon of that day the shipper loaded the car with the merchandise described in the bill of lading procured the previous day. There is testimony to the effect that Rock Island car (C. & R. I. No. 35965) was coopered on December 23d, in the same manner as the Mo. Pac. car, and that at 10:30 A. M. on December 26th, when the switch order was issued for this car and the bill of lading procured therefor, the shipper represented that the car was fully loaded, sealed and ready to go; that on the morning of the 27th, the doors of this car were opened and it was represented by the shipper that the load was being changed and other goods were being placed therein, instead of the goods described in the bill of lading issued, as stated, on the previous day.

There is testimony in defendant's behalf tending to show that about one o'clock P. M. on December 27th, defendant's switch foreman "pulled" this track, which we understand means that he switched the cars from that track. The track contained four cars, the first being a Union Pacific box car, the second the Mo. Pac. car in question, the third a Southern Pacific car loaded, and the fourth the Rock Island car in question; that at that time the bridge from the loading dock to the two cars in question was down and had to be removed before the track could be "pulled;" and that the door of the Rock Island car was open. When the track was "pulled" the switchman took out the Union Pacific empty and the Southern Pacific load, and replaced them with a tank car of molasses and an L. & M. empty, so that at the time of the fire, a few minutes later, the Mo. Pac. car in question occupied spot No. 1, and the L. & N. empty spot No. 2; a Mo. Pac. car spot No. 3, and the Rock Island car in question, spot No. 4, at the loading dock.

Some evidence was introduced to the effect that the shipper herein had been in the habit of procuring switch orders before having sealed the cars, reporting to defendant's yard clerk that they were sealed and ready to go, obtaining bills of lading on cars not fully loaded, or empty, and that the railroad agent had remonstrated that

the practice was wrongful. Upon this testimony defendants base their defense, as pleaded, that at the time the bills of lading were issued the cars did not contain the goods described therein, and that the bills of lading sued on were void, and plaintiff should not recover. The testimony shows that the bills of lading with drafts attached were assigned and delivered to plaintiff bank and thence forwarded to other banks at the destination of each shipment; that the goods were never delivered and the drafts were returned unpaid. Defendants refused payment and these suits followed.

While it is defendants' contention that the cars in question were not loaded at the time the switch orders were issued, plaintiff insists that the evidence on this point is strongly contradictory. Mr. Marsh, the State weighmaster, testifying for defendants, stated that he had actually counted the contents of the Rock Island car at four o'clock P. M. on December 26th, and found it to contain the exact number of sacks specified in the bill of lading; that the car was sealed, the seals bearing the numbers 7646 and 7647, and that the loading of the car was finished at that time. This witness further testified that he worked at the loading dock during the entire forenoon of December 27th and up to the time of the fire, and that if the seals of the car had been broken at that time and the doors open, he would have noticed it, and that he did not notice anything of the kind. There is other testimony in the record which we need not specifically point out which is strongly contradictory of defendants' statement that the cars were not fully loaded at the time of the fire.

Defendants answered in each case, setting up the fact that the cars, at the time the bills of lading were issued did not contain the goods therein described. The trial court adopted the view of plaintiff and submitted the case to the jury upon the theory that the bills of lading were not void, but voidable, and that if the evidence showed that before the fire occurred the two cars in question were actually loaded with the same goods as described in the bills of lading, the defendants had constructive possession of the goods and were therefore liable.

It is urged in behalf of this appeal that the court erred in overruling peremptory instructions in behalf of each defendant. In this connection it is urged that a carrier is not liable for a shipment while still in the control of the shipper and of which the carrier has not received the actual custody and notice given it, even though the carrier has issued bills of lading therefor. It is also insisted that the point of time marking the commencement of the carrier's liability is that moment when the shipper surrenders entire custody of the goods and the carrier receives complete control of them for shipment at the earliest practicable opportunity in the usual course of business. Defendants cite authorities upholding this plain state-

220 Mo. App.—60.

ment of the law. And the question arises, in the circumstances before us, as to when the custody and control of the shipments passed from the shipper to these defendants.

It is admitted that the bills of lading introduced in evidence were issued by defendants, showing the receipt by them of the merchandise alleged to have been shipped. Likewise the nondelivery of the goods was admitted, also proved. The value of the merchandise also was established by evidence and that plaintiff was holder in due course of the bills of lading. It has been held that such showing made a prima-facie case. This being true, the case could not thereafter be taken from the jury. [Peterson v. Railroad, 265 Mo. 462, 480; Ladd v. Williams, 104 Mo. App. 390, 397.] Plaintiff having made a prima-facie case, it devolved upon the defendants to overcome same by substantial evidence to satisfy the jury that the goods were not delivered to defendants.

Defendants attempt to make some point of the fact that the bills of lading contained the notation "shipper's load and count" but this notation cannot be accepted as having the effect of overcoming the prima-facie case made. We accept this notation only as indicative of the fact that defendants received the shipper's load and count and issued bills of lading accordingly. [Brown v. Railroad, 112 Pac. 147.] Moreover, plaintiff's testimony in rebuttal was substantial and tended to show actual delivery of the goods to defendant. In this situation it will not be contended, we take it, that the trial court was in error in refusing defendants' peremptory instructions. In the face of the contradictory evidence, the solution was surely one for the triers of fact.

Plaintiff's instructions numbered 1 and 2 are attacked as erroneous in that they told the jury that if "plaintiff bank purchased the bills of lading in good faith, in the belief that when said bills of lading were issued, said merchandise had been received by said railroad company . . . and that said plaintiff bank ever since said time has been the holder of said bills of lading and now holds the same as collateral security for the payment of an unpaid obligation," etc., of the shipper, then its verdict should be for plaintiff. It is insisted that the instructions were erroneous, plaintiff having taken the bills of lading (which were negotiable instruments) as collateral security for a preëxisting debt, plaintiff was not a bona-fide holder for value and was subject to all the equities which existed between the original parties.

Defendants argue that the actual receipt of the goods lies at the foundation of a contract to carry and deliver and that a common carrier is not liable for loss of goods not actually received. However, as held in the discussion of the preceding point, the question of whether or not the goods were received by defendants being controverted, was for the consideration of the jury.

We think section 13545, Revised Statutes 1919, fully settles this point against the contention of appellants, and further discussion is unnecessary. The language of the statute pertinent to this inquiry is as follows:

"If a bill of lading has been issued by a carrier or on his behalf by an agent or employee the scope of whose actual or apparent authority includes the issuing of bills of lading, the carrier shall be liable to—(a) The consignee named in a non-negotiable bill, or (b) The holder of a negotiable bill, who has given value in good faith relying upon the description therein of the goods, for damages caused by the nonreceipt by the carrier or a connecting carrier of all or part of the goods or their failure to correspond with the description thereof in the bill at the time of its issue."

There is no merit in defendants' argument that plaintiff has no right to recover because it holds the bills of lading as collateral security only. At best this was a controverted issue for the determination of the jury, and we may not disturb the finding in this respect. We hold plaintiff's instructions 1 and 2 were properly submitted.

It is charged that instructions A and B given by the court on its own motion were erroneous "for the reason that the undisputed evidence shows that ten or fifteen minutes before the fire, the shipper notified the defendant Missouri Pacific Railroad, that the loading of the cars was not completed and it was not ready to surrender control over the shipment to the defendant, and since there was no evidence that in the usual course of business the defendants were given an opportunity to take possession of the cars before the fire, there was no delivery."

This argument of defendants is not supported by the undisputed facts. There is substantial evidence of record that the Missouri Pacific car was loaded a sufficient time prior to the fire to have enabled defendant to have moved the car. As stated above, this being a material and controverted fact, we cannot convict the trial court of error in submitting the issue to the jury. We see in this situation no violation of section 13459, Revised Statutes 1919, rendering the bill of lading void. In the instructions complained of the court required the jury to find that all the merchandise described in the bill of lading had been loaded in the car, as alleged by plaintiff.

We have carefully examined defendants' citations on the various points raised but fail to find in any a ruling contradictory to the conclusions we have reached. The general rule in respect to delivery is laid down in 10 C. J. 223, section 308, as follows:

"Constructive delivery may be made sufficient by a special contract, custom or usage, and the placing of the goods by the shipper in the place where they are accustomed to be deposited, or at a place specifically designated by contract, will be sufficient delivery and ac-

ceptance to charge the carrier as an insurer, although no actual notice is given to the carrier or assent shown.''

This rule is discussed ably and at length in Pittsburg, etc., Ry. v. Tobacco Co., 104 S. W. 377, and the reasoning therein applies forcibly to the facts in the case at bar. We find no reversible error of record and the judgments are affirmed in both cases.

*Bland, J.*, concurs; *Trimble, P. J.*, absent.

